Nathan M. Olsen, ISB No. 7373
Adam N. Olsen, ISB No. 11594
**OLSEN TAGGART PLLC**
P. O. Box 3005
Idaho Falls, ID 83403
Telephone: (208) 552-6442
Facsimile: (208) 524-6095
Email: nolsen@olsentaggart.com
        aolsen@olsentaggart.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| VAL PALMER, an individual, and COLEEN Palmer, and individual, | Case No. 1:22-cv-103-DKG |
| Plaintiffs, | |
| vs. | **PLAINTIFFS' OBJECTION TO DEFENDANTS' MOTION TO DISMISS** |
| PAUL A. CARRANZA, an individual, ANDREW HEITZMAN, an individual, ADAM MATTHEWS, an individual, MATTHEW RAPATTONI, an individual, and KYLIE WHITE, an individual, | |
| Defendants. | |

COMES NOW, Plaintiffs Val Palmer ("Mr. Palmer"), and Coleen Palmer ("Mrs. Palmer"), by and through counsel, and submits this *Plaintiffs' Objection to Defendants' Motion to Dismiss*. This Objection is supported by the Plaintiffs, *Complaint and Demand for Jury Trial,* (dkt. 1), filed on March 4, 2022.

## INTRODUCTION

The Defendants Andrew Heitzman ("Detective Heitzman"), Paul A. Carranza ("Officer Carranza"), Adam Matthews ("Officer Matthews"), Matthew Rapattoni ("Officer Rapattoni"), and Kylie White ("Officer White") seek to dismiss Plaintiffs' First Amendment retaliation claims and Fourth Amendment unlawful arrest claims based on Rule 12(b)(6) and 17(b). (Dkt. 12.) For the following reasons, the Court should deny the Defendants' motion to dismiss.

## STATEMENT OF FACTS

The facts of this case are remarkable simple—notwithstanding the numerous facts the Defendants inserted into their Memorandum, (dkt. 12), that were never alleged in the Complaint. On September 13, 2021, at around 8:45 a.m., Plaintiff Mr. Palmer was heading to the gym when his car ran out of gas on the Franklin Overpass in Caldwell, forcing Mr. Palmer to pull his vehicle to the shoulder of the road. (Dkt. 1 ¶¶ 12-14.) Shortly thereafter, Mr. Palmer called his wife, Plaintiff Mrs. Palmer, to bring him gas. (Dkt. 1 ¶ 15.) While waiting for his wife to bring him gas, Mr. Palmer excited his vehicle and began to stretch his arms and legs against a fence and barrier overlooking I-84. (Dkt. 1 ¶ 22.) From afar, Defendant Detective Heitzman observed Mr. Palmer stretching and thought Mr. Palmer was attempting to climb the fence to commit suicide. (Dkt. 1 ¶ 24, 27.) Upon maneuvering his police vehicle behind Mr. Palmer's vehicle, Detective Heitzman ordered Mr. Palmer to sit and not run away, which Mr. Palmer complied with. (Dkt. 1 ¶ 26.) Detective Heitzman then informed Mr. Palmer that he thought Mr. Palmer was attempting suicide. (Dkt. 1 ¶ 27.) Mr. Palmer denied that he was attempting to commit suicide and that he was simply stretching while waiting for his wife to bring him gas. (Dkt. 1 ¶ 29.) Mr. Palmer then exited the curb and demonstrated the stretch he was doing, at which point Detective Heitzman ordered Mr. Palmer to sit and Mr. Palmer, again, complied. (Dkt. 32.)

While sitting on the curb, Mr. Palmer expressed his frustration at being ordered to sit and that in the past he has had bad experiences with the police. (Dkt. 1 ¶ 33.) Mr. Palmer also said that he was "alright." (Dkt. 1 ¶ 33.) At around that moment, Mr. Palmer put his hands into his blue workout vest to retrieve his phone to answer a phone call from his wife. (Dkt. 1 ¶¶ 36-37.) With Mr. Palmer's hands already in his pocket, Detective Heitzman ordered Mr. Palmer to remove his hand out of his pocket. (Dkt. 1 ¶ 36.) Mr. Palmer complied and removed his hand from his pocket with phone in hand and asked for permission to answer, which Detective Heitzman granted, then, out of frustration, Mr. Palmer yells "it's a free country still, it's still a free country right?" (Dkt. 1 ¶ 37.) While on the phone with his wife, Mr. Palmer was calm but did insinuate that the police were there to harass him. (Dkt. 1 42.) As Mr. Palmer was calmly talking on the phone, Defendants Officer Carranza and Officer White arrived on scene and stood a few feet away from Mr. Palmer to both Mr. Palmer's right and left. (Dkt. 1 ¶¶ 41, 45.)

With both officers surrounding him, Mr. Palmer calmly informed Officer Carranza that he was waiting for gas. (Dkt. 1 ¶ 45.) Mr. Palmer then pointed out Mrs. Palmer and her father at the end of the overpass with a gas canister heading towards the scene. (Dkt. 1 ¶ 47.) Officer Carranza looked over his shoulder and saw Mrs. Palmer and her father with the gas cannister and then asked Mr. Palmer why he was attempting to climb the fence. (Dkt. 1 ¶ 48-49.) Mr. Palmer again stated that he was merely waiting for gas. (Dkt. 1 ¶ 49.) "Mr. Palmer then stood up from the curb, pointed toward his wife and father-in-law and asked to be let go so that he could grab the gas canister from his wife." (Dkt. 1 ¶ 50.)

At this moment, Officer Carranza sternly ordered Mr. Palmer to "sit down." (Dkt. 1 ¶ 51.) "Before Mr. Palmer had an opportunity to sit back down, Officer Carranza positioned himself in front of Mr. Palmer and placed his hand on Mr. Palmer's chest. Mr. Palmer backed

away stating, 'Don't touch me, please, don't touch me,' and procedded to sit back down" (Dkt. 1 ¶ 52.) As Mr. Palmer proceeded to sit back down, Officer Carranza grabbed Mr. Palmer's left arm and shoulder and ordered Mr. Palmer to put his hands behind his back. (Dkt. 1 ¶ 53.) Mr. Palmer refused. (Dkt. 1 ¶ 53.) "Officer Carranza then jumped on Mr. Palmer's back, jammed a knee into his back, and placed a forearm upon the back of Mr. Palmer's neck—forcefully trying to push Mr. Palmer face forward onto the ground." (Dkt. 1 ¶ 54.) "Shocked . . . Mr. Palmer balanced himself by placing both hands on the ground in order to avoid a faceplant into the concrete." (Dkt. 1 ¶ 55.) After a few seconds and—once Mr. Palmer comprehended what was happening—Mr. Palmer gave up his hands without resistance. (Dkt. 1 ¶ 56.) While on the ground, Mr. Palmer again stated that he was just waiting for gas to which Officer White responded by telling Mr. Palmer to stop talking. (Dkt. 1 ¶ 58.)

Mrs. Palmer witnessed Mr. Palmer being accosted by the Defendants and protested to the Defendants by stating that Mr. Palmer was "fine" and simply "ran out of gas." (Dkt. 1 ¶ 59.) At around that moment, and while Mr. Palmer was still in the ground, Detective Heitzman pulled Mrs. Palmer aside and falsely claimed that Mr. Palmer was attempting to climb the fence and was not complying with orders. (Dkt. 1 ¶ 60.) Mrs. Palmer was not buying it and told Detective Heitzman that "somebody has an ego problem," (dkt. 1 ¶ 61), and that the Defendants were "bored, obviously," (dkt. 1 ¶ 66). This upset Detective Heitzman, who then yelled at Mrs. Palmer to "go fill up the gas can" and then ceremoniously ended the conversation by calling Mrs. Palmer a "fucking dumb bitch." (Dkt. 1 ¶ 68.)

Shortly thereafter, the Defendants—without conducting any investigation to verify Mr. Palmer's true and consistent statement that he was merely waiting for gas and not attempting to commit suicide —(dkt. 1 ¶ 74), decided to place Mr. Palmer on a mental hold, (dkt. 1 ¶ 72), even

though Mr. Palmer was calm in the police vehicle, (dkt. 1 ¶ 71), and Mrs. Palmer could have taken custody of Mr. Palmer, (dkt. 1 ¶ 73). While at the hospital, it was clear to the medical staff that Mr. Palmer was not gravely disabled. (Dkt. 1 ¶ 79, 82.) In fact, the medical staff even contacted the Canyon County Prosecutor Office demanding Mr. Palmer's immediate release. (Dkt. 1 ¶¶ 80-81.) Unfortunately, the request was denied and due to the processes to be released from a mental hold, Mr. Palmer remained in a psyche ward for over 50 hours. (Dkt. 1 ¶ 84.) Due to Mr. Palmer's confinement, the Plaintiffs suffered emotional pain and suffering, reputational harm, and other general and special damages. (Dkt. 1 ¶¶ 88-93, 98, 110, 127, 134. 144, 153, 162.)

To sum it up, Mr. Palmer was accosted by the Defendants and thrown into a mental hospital for 50 hours for the crime of waiting for gas on the shoulder of an overpass.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 8(a)(2) a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." A party may move to dismiss a complaint under Fed. R. Civ. P. 12(b)(6) if the complaint fails "to state a claim upon which relief can be granted." When ruling on a defendants' motion to dismiss, "[a]ll factual allegations set forth in the complaint 'are taken as true and construed in the light most favorable to [p]laintiffs.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001) (quoting *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir.1996)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "After any conclusory statements have been removed, the court must then analyze the remaining factual allegations in the complaint 'to determine if they plausibly suggest an entitlement to relief.'" *Ceperich v. Countrywide Home Loans Inc.*, No. 1:12-

CV-063-EJL-LMB, 2013 WL 654362, at *1 (D. Idaho Jan. 15, 2013) (quoting *Delta Mech., Inc. v. Garden City Grp., Inc.*, 345 F. App'x 232, 234 (9th Cir. 2009). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)).

In reviewing a motion to dismiss, the Court is to only consider the fact as plead in the Complaint and not resolve factual disputes between the parties. *Lee*, 250 F.3d at 688; *Contreras v. City of Nogales,* No. CV-20-00199-TUC-DCB, 2020 WL 6273406, at *1 (D. Ariz. Oct. 26, 2020). "This high standard at the pleading stage makes Rule 12(b)(6) motions disfavored." *Contreras*, 2020 WL 6273406, at *1.

## ARGUMENT

**I.  The Plaintiffs have adequately plead that the Defendants retaliated against the Plaintiffs for expressing their First Amendment right to free speech.**

Under the First Amendment of the United States Constitution, as applied through the Fourteenth Amendment, a state actor shall not abridge a person's freedom of speech. Applying the First Amendment right of freedom of speech, the United States Supreme Court has stated that a person has the right to verbally oppose, challenge, or criticize a police officer's actions without risking arrest. *City of Houston, Tex. v. Hill*, 482 U.S. 45, 461-463 (1987). In fact, this right to verbally oppose, challenge, or criticize a police officer's actions without risking arrest "is one of the principal characteristics by which we distinguish a free nation from a police state." *Hill*, 482 U.S. at 463; *See Mackinney v. Nielsen*, 69 F.3d 1002, 1007 (9th Cir. 1995). As such, a police officer has retaliated against a plaintiff's First Amendment right to free speech if the plaintiff proves that:

(1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.

*Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022) (quoting *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010)).

The Defendants have not challenged element (1) and (2). Instead, the Defendants assert that element (3) was not met because they had probable cause to arrest Mr. Palmer under Idaho Code § 18-709. For the following reasons, the Plaintiffs have adequately plead element (3).

**A. The Defendants may still be liable for retaliating against the Plaintiffs for exercising their free speech even if the Defendants had probable cause to arrest Mr. Palmer.**

The Plaintiffs have adequately plead the exception to the probable cause requirement in retaliatory arrest claims. In the Defendants' Memorandum, the Defendants cite *Nieves v. Barlett*, 139 S. Ct. 1715, 1723 (2019) for the conclusory statement that " . . . in retaliatory arrest claims, plaintiffs must plead the absence of probable cause for the underlying criminal charge." The Defendants' statement is an inaccurate holding of the *Nieves* Court.

In *Nieves*, the Court found that in retaliatory arrest cases a plaintiff "should" prove the absence of probable cause for the arrest because of the difficulty in determining whether the police officer's actions "was caused by the officer's malice or the plaintiff's potentially criminal conduct." *Id* at 1724. However, later in the Opinion, the *Nieves* Court states that "although probable cause should generally defeat a retaliatory arrest claim, a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id* at 1727. To meet this exception, the plaintiff must "present objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id*. The Ninth Circuit has found

that this no-probable cause exception is generally "an issue for the trier of fact." *Ballentine*, 28 F.4th at 63.

Here, the Plaintiffs have provided fair notice to the Defendants that even if the Defendants had probable cause to arrest Mr. Palmer, the no-probable cause exception applies. In Paragraphs 106 and 122 the Plaintiffs state that had they "not directed their comments towards police misconduct, Mr. Palmer would not have been arrested for a minor crime that officers [ . . .] typically use discretion to enforce." In essence, the Plaintiffs are asserting, and the Court can reasonably infer, that a similarly situated individual would not have been handcuffed, thrown in a police car, and placed on a mental hold for stretching up against a fence while waiting for gas. However, because Plaintiffs had verbally opposed, challenged, and criticized what they perceived as Defendants' misconduct, (*see* dkt. 1 ¶ 105(a)-(e)), they were treated differently from others in similar situations. As such, Plaintiffs' retaliatory claim should not be dismissed because the Plaintiffs have adequately plead the no-probable cause exception—especially since the no-probable cause exception is an issue left to the trier of fact to determine.

## B.  The Defendants lacked probable cause to arrest Mr. Palmer.

The Plaintiffs have also adequately plead that the Defendants lacked probable cause to arrest Mr. Palmer. Under the Fourth Amendment to the United States Constitution, as applied through Fourteenth Amendment, a state actor must have probable cause to arrest an individual. "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Henry v. United States*, 361 U.S. 98, 102, 80 S. Ct. 168, 171, 4 L. Ed. 2d 134 (1959); *See Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1076 (9th Cir. 2011).

In determining whether an officer had probable cause to arrest an individual, it is important to know when the arrest occurred. *See Terry v. Ohio*, 392 U.S. 1 (1968). A person has been arrested within the meaning of the Fourth Amendment if:

> . . . in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

*United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

In the present case, the Plaintiffs have alleged numerous points during Mr. Palmer's interaction with the Defendants in which Mr. Palmer was under arrest. (Dkt. 1 ¶ 148(a)-(h)). The Defendants appear to ignore these allegations by claiming that everything up to the point of ordering Mr. Palmer to place his hands behind his back was a part of the Defendants' community caretaking function. However, the community caretaking function is merely a limited exception to the warrant requirement that allows an officer to detain an individual for a purpose that is "'totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.'" *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1137 (2019) (quoting *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)). Generally, the community caretaking exception is used in emergencies where the health or safety of the public or the individual is in danger. *Id*.

Here, taking all the fact in the light most favorable to the Plaintiffs, Mr. Palmer's seizure under the community caretaking function was unreasonable. Mr. Palmer was not in danger of hurting himself or others. While Detective Heitzman misinterpreted Mr. Palmer stretching up against the fence as an attempt at suicide, Mr. Palmer informed Detective Heitzman that he was

stretching while waiting for gas. (Dkt. 1 ¶ 29.) Mr. Palmer complied with Detective Heitzman's orders to sit and remove his hands from his pockets. (Dkt. 1 ¶¶ 26, 32, 36.) Mr. Palmer did show some frustration at being ordered to sit and keep his hands out of his pocket, (dkt. 1 ¶¶ 33, 37, 40), but Mr. Palmer was otherwise calm, (dkt. 1 ¶¶ 38, 41, 46), and informed Detective Heitzamen that he was "alright," (dkt 1 ¶ 35). Mr. Palmer also calmly talked to his wife informing her to hurry up with the gas. (Dkt. 1 ¶ 39.) And just prior to being handcuffed, Mr. Palmer even pointed out his wife with the gas cannister at the end overpass, which Officer Carranza acknowledged. (Dkt. 1 ¶ 47.)

Yet, notwithstanding all the facts suggesting Mr. Palmer was not a danger to himself or others but was merely waiting for gas, the Defendants are alleging that preventing Mr. Palmer from standing up and retrieving the gas cannister from his wife was for Mr. Palmer's safety as well as the publics. Taking all of these facts in the light most favorable to the Plaintiffs, this was an unreasonable use of the Defendants' community caretaking function. As such, Mr. Palmer was under arrest without probable cause well before Mr. Palmer was ordered to place his hands behind his back.

The Defendants' assertion that they had probable cause upon Mr. Palmer's initial refusal to place his hands behind his back is also unavailing. According to the Defendants, the two seconds Mr. Palmer refused to place his hands behind his back amounts to a crime under Idaho Code § 18-705.[1] Pursuant to Idaho Code § 18-705:

> Every person who wilfully resists, delays or obstructs any public officer, in the discharge, or attempt to discharge, of any duty of his office . . . is punishable by a fine not exceeding one thousand dollars ($1,000), and imprisonment in the county jail not exceeding one (1) year.

---

[1] Of note, the Defendants in their Memorandum have not made an argument that they had probable cause to arrest Mr. Palmer under Caldwell Code § 08-01-27.

In *State v. Bishop*, the Idaho Supreme Court found that there are three elements that must be met for an individual to be guilty of a crime under Idaho Code § 18-705:

> (1) the person who was resisted, delayed or obstructed was a law enforcement officer; (2) the defendant knew that the person was an officer; and (3) the defendant also knew at the time of the resistance that the officer was attempting to perform some official act or duty.

*Bishop,* 146 Idaho at 816, 203 P.3d at 1215. When applying element 3, the Court found that the term "duty . . . includes only 'those lawful and authorized acts of a public officer.'" *Id,* 146 Idaho at 817, 203 P.3d at 1216 (quoting *State v. Wilkerson*, 114 Idaho 174, 180, 755 P.2d 471, 477 (Ct. App. 1988)). Therefore, "[b]ecause an unlawful act is not considered a 'duty' under the statute, an individual may peacefully obstruct or refuse to obey an officer's unlawful act without violation the statute." *Bishop*, 146 Idaho at 817, 203 P.3d at 1216. In *Bishop*, an individual who was unlawfully frisked by law enforcement twice told the law enforcement officer "no" to being frisked. *Id*, 146 Idaho at 808, 203 P.3d at 1208. The officer then informed the individual that he was under arrest for obstructing a police officer and attempted to handcuff the individual. *Id*. A struggled ensued in which it was not until after back-up arrived that law enforcement was able to place the individual into handcuffs. *Id*. The Court found that the act of saying "no" to being frisked was peaceful resistance and that the struggle, thereafter, was irrelevant because it occurred after resisting an unlawful frisk. *Id*, 146 Idaho at 821, n. 17, 203 P.3d at 1220, n. 17.

Here, taking all the facts as true and liberally construing them in Plaintiffs' favor, Mr. Palmer had not violated Idaho Code § 18-705. The Defendants were not performing a lawful duty when they ordered Mr. Palmer to place his hands behind his back. Up to that point, Mr. Palmer had complied with every order. Mr. Palmer kept his hands out of his pocket when he was ordered to do so. (Dkt. 1 ¶ 36.) Mr. Palmer sat when ordered to do so, even to the moment that the officers attempted to handcuff him. (Dkt. 1 ¶¶ 26, 32, 52.) Mr. Palmer was also calm for most

of the incident and told the officers he was alright. (Dkt. 1 ¶¶ 38, 41, 46.) Yet, the moment Mr.

Palmer wife arrives with the gas cannister which corroborated Mr. Palmer's claim that he was

merely waiting for gas, the Defendants decided to brutally accost Mr. Palmer. (Dkt. 1 ¶¶ 47, 50,

54.) Obviously, the Defendants actions were unlawful, and any struggle thereafter is irrelevant to

Mr. Palmer's claim of First Amendment retaliation.

  Nevertheless, Mr. Palmer's refusal to place his hands behind his back was passive

resistance to an unlawful order. Of note, the officers never told Mr. Palmer that he was under

arrest for any crime. Instead, they ordered Mr. Palmer to sit, which Mr. Palmer complied with

and then Officer Carranza placed his hands on Mr. Palmer's arm and shoulder and ordered him

to place his hands behind his back. (Dkt. 1 ¶¶ 52-53.) Mr. Palmer's initial refusal was the

equivalent of saying "no." At this point, the Defendants' brutally accosted Mr. Palmer by

jumping on his back, jamming a knee into his back, and placing a forearm upon the back of Mr.

Palmer's neck. (Dkt. 1 ¶ 54.) The Defendants claim that the mere act of Mr. Palmer placing both

hands on the ground to avoid a faceplant into the concrete for a few seconds, (dkt. 1 ¶¶ 55-56), is

a crime under Idaho Code § 18-705. But this is not so.

  First, for an individual to be guilty under Idaho Code § 18-705 for obstruction, the

individual must willfully resist. Willfulness is defined as "a purpose or willingness to commit

the act . . .." Idaho Code § 18-101. In this instance, Mr. Palmer was not willingly resisting an

arrest (which he was never informed of): he was merely taking the natural action of

protecting himself from faceplanting into the concrete by balancing himself on his knees and

hands. Second, whatever willful physical resistance Mr. Palmer may have exhibited was only

for a brief few second until Mr. Palmer was able to comprehend what was occurring. (Dkt. 1

¶ 56.) The failure to not immediately comply with an officer's request is not obstruction. *See*

*Mackinney*, 69 F.3d at 1008 (interpreting California's obstruction statute—which is similar to Idaho obstruction statute). The Defendants are essentially trying to wash away their retaliation against the Plaintiffs due to a mere few seconds in which Mr. Palmer was not even fully aware that the officers were attempting to arrest him. Third, Mr. Palmer never attacked the Defendants, he merely balanced himself for a few seconds and then gave up his hands without resistance once he realized that the officers sought to handcuff him by force. (Dkt. 1 ¶ 56.) If such an act can be called resistance—particularly since Mr. Palmer gave up his hands without resistance—it is mere passive resistance. Therefore, the Defendants lacked probable cause to arrest Mr. Palmer. Thus, the Plaintiffs' First Amendment retaliation claim should not be dismissed.

## II.     The Plaintiffs' Fourth Amendment Unlawful Detainment Claim Under the Mental Hold Statute should not be dismissed because the Defendants lacked probable cause to place Mr. Palmer on a mental hold.

The Defendants lacked probable cause to place Mr. Palmer on a mental hold; therefore, Plaintiffs' Fourth Amendment Unlawful Detainment Claim Under the Mental Hold Statute should not be dismissed. As a preliminary matter, the Defendants assert that probable cause is not a requirement to place an individual on a mental hold. This assertion does not comply with the case law or the Constitution. The Ninth Circuit has clearly stated that a mental hold is "a seizure [that] is analogous to a criminal arrest and must therefore be supported by probable cause*." Maag v. Wessler*, 960 F.2d 773, 775 (9th Cir. 1991). Moreover, nearly every Circuit Court in United States has found that probable cause is required to place a person on a mental

hold.[2] As such, the Defendants must have had probable cause to place Mr. Palmer on a mental hold.

Probable cause is an objective standard. *Ornelas v. United States*, 517 U.S. 690, 696, 116 S. Ct. 1657, 1661, 134 L. Ed. 2d 911 (1996). Whether an officer has probable cause to seize an individual is based on the totality of the circumstance. *United States v. Buckner*, 179 F.3d 834, 837 (9th Cir. 1999) "As a corollary . . . [to] the rule that the police may rely on the totality of facts available to them in establishing probable cause, they also may not disregard facts tending to dissipate probable cause." *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988) (citation omitted).

> If probable cause is established at any early stage of the investigation, it may be dissipated if the investigating officer later learns additional information that decreases the likelihood that the defendant has engaged, or is engaging, in criminal activity. A person may not be arrested, or must be released from arrest, if previously established probable cause has dissipated.

*U.S. v. Ortiz-Hernandez*, 427 F.3d 567, 574 (2005).

Under Idaho mental hold statutes only in emergency situations may a police officer involuntarily place a mental hold on an individual. Idaho Code § 66-326 ("No person shall be taken into custody or detained as an alleged <u>emergency</u> patient . . ." (emphasis added)); Idaho Code § 66-326(12) ("Nothing provided in this section shall limit the authority of any law enforcement officer to detain a patient pursuant to the <u>emergency authority</u> conferred by section 66-326, Idaho Code" (emphasis added)). If there is an emergency, the police officer may only

---

[2] *Graham v. Barnette*, 5 F.4th 872, 884 (2021); Myers v. Patterson, 819 F.3d 625, 632 (2d Cir. 2016); *Cantrell v. City of Murphy*, 666 F.3d 911, 923 (5th Cir.2012); *Roberts v. Spielman*, 643 F.3d 899, 905 (11th Cir. 2011); *Cloaninger ex rel. Estate of Cloaninger v.McDevitt*, 555 F.3d 324, 334 (4th Cir. 2009*); Meyer v. Bd. of Cnty. Comm'rs of Harper Cnty.*, 482 F.3d 1232, 1239 (10th Cir. 2007); *Ahern v. O'Donnell*, 109 F.3d 809, 817 (1st Cir. 1997); *Monday v. Oullette*, 118 F.3d 1099, 1102 (6th Cir. 1997*); Sherman v. Four Cnty. Counseling Ctr.*, 987 F.2d 397, 401-02 (7th Cir. 1993).

place a person on an involuntary mental hold if the police officer has "reason to believe that the person is gravely disabled due to metal illness or the person's continued liberty poses an imminent danger to that person or others, as evidence by a threat of substantial physical harm."

Taking all the fact in a light most favorable to the Plaintiffs, the Defendants lacked probable cause to place Mr. Palmer on a mental hold. While Detective Heitzman had falsely perceived that Mr. Palmer was attempting to commit suicide by the climbing the fence, the facts after Detective Heitzman made contact with Mr. Palmer would suggest to an objective reasonable police officer that Mr. Palmer was not gravely disabled or an imminent threat. Mr. Palmer complied with the Detective Heitzman and Officer Carranza's orders to sit. (Dkt. 1 ¶¶ 26, 32, 52.) Mr. Palmer complied with Detective Heitzman's order to keep his hands out of his pocket. (Dkt. 1 ¶ 36.) Mr. Palmer expressing his frustration with how the police were treating him, (*see* dkt. 1 ¶¶ 33, 37, 40), does not make him gravely disabled or a threat to others but instead a person exercising his First Amendment right to verbally oppose, challenge, or criticize a police officer's actions.

Any notion that Mr. Palmer was gravely disabled or a threat to others should also have been dispelled when Mrs. Palmer and her father arrived with the gas cannister, which corroborated Mr. Palmer's assertion that he was merely waiting for gas. (Dkt. 1 ¶¶ 47, 59.)  If this were not enough, the medical personal at West Valley believed that Mr. Palmer was not gravely disabled and that the Defendants' actions were unjustified. (Dkt. 1 ¶¶ 79-80.) Yet, the Defendants disregarded the facts because of their unwavering intent to place Mr. Palmer on a mental hold. (Dkt. 1 ¶ 74.)

Lastly, no emergency existed as Mrs. Palmer and her father were willing to care for Mr. Palmer.

Therefore, the Defendants lacked probable cause to place Mr. Palmer on a mental hold. As such, Plaintiffs' Fourth Amendment Unlawful Detainment Claim Under the Mental Hold Statute should not be dismissed.

## III.   The Plaintiffs' Fourth Amendment Unlawful Seizure Claim should not be dismissed.

For each of the reasons stated above, the Defendants lacked probable cause to arrest Mr. Palmer. Mr. Palmer never committed a crime. He simply waited for gas and was brutally accosted by the Defendants because he dared to stand up from the curb to retrieve a gas cannister and then sit back down. Whatever resistance the Defendants attribute to Mr. Palmer's refusal to place his hands behind his back and then balance himself on the concrete in order to avoid a faceplant, is passive resistance to an unlawful action. Lastly, Mr. Palmer was not gravely disabled or an imminent threat as Mr. Palmer complied with every order and the Defendants disregarded facts that Mr. Palmer, as he said throughout the incident, was waiting for gas and not attempting to commit suicide. Therefore, the Plaintiffs' Fourth Amendment Unlawful Seizure Claim should not be dismissed.

## IV.   Mrs. Palmer has standing to bring her First Amendment retaliation claim.

The Defendants assertion that Mrs. Palmer lacks standing because she is the spouse of Mr. Palmer is contrary to the very holdings in the case law the Defendants cite. In the Defendants' Memorandum they cite *Biggs v. Best, Best & Krieger*, 189 F.3d 989, 999 (9th Cir. 1999) for the conclusory statement that "[w]here two spouses claim that their protected speech led to First Amendment retaliation in the form of direct government action against one of the spouses, the other spouse does not have a claim of his or her own." (Dkt. 12-1 p. 14.) This is a gross misunderstanding of *Biggs v. Best, Best & Krieger*. Instead, the Court held that a spouse can bring the same claim as the other spouse if they are derivative of each other. *Biggs*, 189 F.3d

at 998-99. In *Briggs*, the derivative spouse's claim was dismissed because the direct action taken against the other spouse by the government entity was dismissed under the theory of qualified immunity. *Id*, at 999. Had the direct spouse's claim not been dismissed, the derivative spouse would have had standing to sue under the same claim. *Id*.

The same reasoning applied in *Dal Molin v. Cnty. of Napa Conservation Dev. & Plan. Dep't*, 266 F. App'x 585 (9th Cir. 2008): because it was not alleged that the prosecution of the father was without probable cause, the daughter (the derivative party) lacked standing.

Therefore, Defendants' later statement that because "Ms. Palmer's claims here are derivative of Plaintiff's [it] should be dismissed," (dkt. 12-1 p. 20), is ironically an admission that Mrs. Palmer has standing. And the facts as alleged support Mrs. Palmers standing in this case.

Mrs. Palmer witnessed her husband, Mr. Palmer, being accosted by the Defendants. (Dkt. 1 ¶ 59.) Upset, she informed the Defendants that Mr. Palmer was "fine" and that he simply "ran out of gas." (Dkt. 1 ¶ 59.) The Defendants ignored her plea—and the gas cannister supporting Mrs. Palmer's assertion that Mr. Palmer simply was waiting for gas—and instead inserted their version of events. (Dkt. 1 ¶ 60.) Mrs. Palmer then exercised her First Amendment right to verbally oppose, challenge, or criticize a police officer's actions by stating that the Defendants had "ego problems," (dkt. 1 ¶ 61), and were "bored, obviously," (dkt. 1 ¶ 66).  In return, Detective Heitzman yelled at her and blithe told her to "go fill up the gas can" and then ceremoniously ended the conversation by calling Mrs. Palmer a "fucking dumb bitch." (Dkt. 1 ¶ 68.) Moments later, the Defendants decide to throw her husband into a mental hospital, (dkt. 1 ¶ 72), even though Mrs. Palmer was capable of taking custody over her husband, (dkt. 1 ¶ 73), and the Defendants lacked probable cause for the mental hold, (dkt. 1 ¶ 143).

As a result, Mrs. Palmer suffered emotional distress, (dkt. 1 ¶ 88), as well as loss of income during her husband's mental hold, (dkt. 1 ¶ 134 "Mrs. Palmer suffered general and special damages," from the incident)—both of which are cognizable injuries in a § 1983 claim. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 (1986) ("compensatory damages [in § 1983 cases] may include not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation ..., personal humiliation, and mental anguish and suffering.'" (citation omitted)); *Biggs*, 189 F.3d at 998 (loss of income is a cognizable injury). Therefore, Mrs. Palmer has standing to bring her First Amendment retaliation claim—as even the Defendants ironically admit.

**V.    Defendants Officer Matthews and Officer Rappatoni should not be dismissed.**

Defendants Officer Matthews and Officer Rappatoni should not be dismissed from this action because the Plaintiffs have adequately plead that Officer Matthews and Officer Rappatoni arrested and placed Mr. Palmer in a mental without probable cause. The Defendants claim that the Plaintiffs have made "unadorned, the-defendant-unlawfully-harmed-me accusations" against Officer Matthews and Officer Rappatoni. However, the Plaintiffs specifically stated that the "defendants decided to transport Mr. Palmer to West Valley Medical Center ("West Valley") to be placed on a mental hold." (Dkt. 1 ¶ 72; *See* Dkt. 1 ¶ 145.) Defendants would suggest that all the Defendants, including Officer Matthews and Officer Rappatoni, decided to place Mr. Palmer on a mental hold without probable case.

Moreover, if probable cause is established at an early stage of an incident but then dissipates as additional information is learned, then the person under arrest must be released. *U.S. v. Ortiz-Hernandez*, 427 F.3d 567, 574 (2005). The complaint alleges that Defendants, which includes Officer Matthews and Officer Rappatoni, lacked probable cause at all stages of

the incident, yet failed to release Mr. Palmer. (Dkt. 1 ¶¶ 148-149.) And the reasons all the

Defendants failed to release Mr. Palmer was because of their animus toward Mr. and Mrs.

Palmer exercise of their First Amendment right to verbally oppose, challenge, or criticize a

police officer's actions. (Dkt. 1 ¶¶ 124, 133, 142, 151.) Therefore, Officer Matthews and Officer

Rappatoni should not be dismissed from this case.

**VI.   Caldwell Code § 08-01-27 and Idaho Code § 18-705 is vague or overbroad as applied to the Plaintiffs.**

In the Defendants' Memorandum, the Defendants state confusion as to the purpose of the

Plaintiffs' assertion that Caldwell Code § 08-01-27 and Idaho Code § 18-705 is vague or

overbroad. The simple explanation is that if the code sections, as applied to the Mr. Palmer, are

vague or overbroad, then the arrest of Mr. Palmer was unlawful, even if the Defendants had

probable cause. *See Lewis v. City of New Orleans*, 415 U.S. 130, 134, 94 S. Ct. 970, 973, 39 L.

Ed. 2d 214 (1974) (vacating a conviction because the criminal statute the person was convicted

of was vague and overbroad). A statute can be vague or overbroad on its face or as applied:

> A statute is unconstitutionally vague as applied if it failed to put a defendant on
> notice that his conduct was criminal. A statute is unconstitutionally vague on its
> face if it fails to provide a person of ordinary intelligence fair notice of what is
> prohibited, or is so standardless that it authorizes or encourages seriously
> discriminatory enforcement.

*U.S. v. Kilbride*, 584 F.3d 1240, 1257 (2009) (citations and quotations omitted)

Laws that curtail speech are to be strictly construed. *Nat'l Ass'n for Advancement of*

*Colored People v. Button*, 371 U.S. 415, 432, 83 S. Ct. 328, 337, 9 L. Ed. 2d 405 (1963).

Moreover, laws that curtal speech against police officers, even speech that is not protected,

"might require a narrower application" to survive scrutiny. *Hill*, 482 U.S. at 451.

In this case, the Defendants cited Mr. Palmer for disorderly conduct under Caldwell Code § 08-01-27 and obstructing an officer under Idaho Code § 18-705. Relevant to this case, under Caldwell Code § 08-01-27 a person engages in disordered conduct if the person:

> . . . B.  Engages in fighting or threatening, or in violent behavior; or
> C. Uses language, an utterance, or gesture, or engages in a display or act that is obscene, physically threatening or menacing, or done in a manner that is likely to inflict injury or incite an immediate breach of the peace . . ..

Under Idaho Code § 18-705 a person is guilty of obstructing an officer if:

> . . .wilfully resists, delays or obstructs any public officer, in the discharge, or attempt to discharge, of any duty of his office . . . is punishable by a fine not exceeding one thousand dollars ($1,000), and imprisonment in the county jail not exceeding one (1) year.

In *Hallstrom v. City of Garden City, Idaho*, 811 F. Supp. 1443, 1457-1458 (D. Idaho 1991), *aff'd in part, rev'd in part sub nom. Hallstrom v. City of Garden City*, 991 F.2d 1473 (9th Cir. 1993), the court held that Idaho Code § 18-705 was not vague or overbroad on its face but left open the door to "as applied" challenges to the law.

Here, the Plaintiffs assert that the Defendants lacked probable cause to arrest Mr. Palmer. However, if the Court were to find that the Defendants had probable cause, the statutes "as applied" to Mr. Palmer are vague and overbroad. As such, Mr. Palmer's arrest was unlawful.

As has been demonstrated in the Defendants' briefing and as alleged in the Complaint, the Defendants appear to take vague terms such as "disorderly conduct" and "willfully resist" to mean that questioning their actions are a crime, even though such conduct is protected speech. (*Compare* Dkt. 1 ¶¶ 105 (a)-(e) with Dkt. 12-1 p. 14.) The Defendants also appear to argue that because they viewed Mr. Palmer as suffering from a mental illness, this also was some sort of threat or display of a threat worthy of arrest.  (*See* Dkt. 1 ¶ 142 "Defendants' actions were instead motivated out of . . . discrimination against Mr. Palmer due to being diagnosed with a

mental illness.") As such, the Defendants hid behind the broad terms in the statute to arrest Mr.

Palmer for exercising his protected speech. Therefore, even if the Defendants had probable

cause—the arrest was unlawful because the code sections are vague and overbroad as applied to

Mr. Palmer.

**VII.    The Plaintiffs have alleged cognizable injuries.**

The Defendants' argument that the Plaintiffs have failed to allege cognizable injuries is

without merit. In *Memphis Cmty. Sch. Dist. v. Stachura*, the United States Supreme Court found

that plaintiffs can recover from numerous different harms caused by a government official's

violation of a plaintiff's constitutional rights:

> We have repeatedly noted that 42 U.S.C. § 1983 creates " 'a species of tort
> liability' in favor of persons who are deprived of 'rights, privileges, or immunities
> secured' to them by the Constitution."  Accordingly, when § 1983 plaintiffs seek
> damages for violations of constitutional rights, the level of damages is ordinarily
> determined according to principles derived from the common law of torts.
>
> Punitive damages aside, damages in tort cases are designed to provide
> "*compensation* for the injury caused to plaintiff by defendant's breach of duty to
> that end, compensatory damages may include not only out-of-pocket loss and
> other monetary harms, but also such injuries as "impairment of reputation ...,
> personal humiliation, and mental anguish and suffering."

*Memphis Cmty. Sch. Dist.*, 477 U.S. at 306.

In this case, the Plaintiffs have alleged numerous facts which go to the emotional pain

and suffering they have endured due to the Defendants' unlawful actions. (Dkt. 1 ¶¶ 88, 92, 93.)

The Plaintiffs have even alleged that the emotional pain and suffering Mr. Palmer suffered

actually manifested itself in the form of hypothyroidism. (Dkt. 1 ¶ 89.) The Plaintiffs have also

alleged special and general damages (dkt. 1 ¶¶ 98, 110, 127, 134, 144, 153, 162), which could

include the lost income Plaintiffs incurred while Mr. Palmer was in the hospital, along with any

other injuries that hitherto arise. Moreover, the Plaintiffs have also alleged that they are

"concerned" that this arrest will affect Mr. Palmer's reputation and business. (Dkt. 1 ¶¶ 91-92.) While the Defendants harp on the word "concerned" to suggest that the Plaintiffs have failed to allege an injury, taking the fact in a light most favorable to the Plaintiffs, the Plaintiffs sought to include reputational harm as a form of injury in this case. As such, the Plaintiffs have alleged cognizable injuries.

**VIII.    The Plaintiffs' Count I Violation of Civil Right claim should not be dismissed.**

The Defendants assert that Count I of Plaintiffs' Complaint should be dismissed because the claim is redundant with the other claims or is an unadorned "the-defendant-unlawfully-harmed-me accusation." This is a misrepresentation of Court I of Plaintiffs' Complaint.

First, Count I realleges all of the facts in the "General Allegation" section of the Complaint. (Dkt.1 ¶ 94.) As is apparent from the above sections, the alleged facts are not just unadorned "the-defendant-unlawfully-harmed-me accusations," but real allegations of police abuse. Second, Count I specifically identifies the statutory authority for the claim, 42 U.S.C. § 1983, (dkt. 1 ¶¶ 95, 97), and that the officer was acting under color of law, (dkt 1 ¶ 97), which are incorporated in the other claims, (dkt. 1 ¶¶ 100, 112, 129, 136, 146, 155). Therefore, the inclusion of Count I in the Complaint is important to the Plaintiffs' remaining claims. Lastly, while Court I conceptually refers to the other claims, it does so in a broad manner, allowing for the possibility of additional counts upon further discovery, while also giving fair notice of the Plaintiffs' claims. Thus, Count I should not be dismissed because it is not redundant or an unadorned "the-defendant-unlawfully-harmed-me accusation."

## CONCLUSION

WHERERFORE, the Defendants' Motion to Dismiss should not be granted for the above reasons.

DATED:      May 17, 2022.

OLSEN TAGGART PLLC

/s/ *Adam N. Olsen*
Adam N. Olsen
Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

  I hereby certify that on the 17th day of May, 2022, I caused the foregoing to be filed electronically with the Clerk of the Court through the CM/ECF system, which will cause notice of such filing to be served upon the following parties or counsel by electronic means, and upon any other attorneys who have appeared for the parties or are designated to receive notice of filings in this matter in the ECF system as more fully reflected on the Notice of Electronic Filing.

Michael J. Elia, Esq.
mje@melawfirm.net
Peter E. Thomas, Esq.
peter@melawfirm.net

           /s/ *Adam N. Olsen*       
           Adam N. Olsen