UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

----oo0oo----

| | |
|---|---|
| VAL PALMER, an individual; and COLEEN PALMER, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>PAUL A. CARRANZA, an individual; ANDREW HEITZMAN, an individual; ADAM MATTHEWS, an individual; MATTHEW RAPATTONI, an individual; and KYLIE WHITE, an individual,<br><br>Defendants. | No. 1:22-cv-103 WBS<br><br><u>MEMORANDUM AND ORDER RE:</u><br><u>DEFENDANTS' MOTION TO DISMISS</u> |

----oo0oo----

Plaintiffs Mr. Val Palmer and Mrs. Coleen Palmer brought this action against Caldwell Police Officers Paul A. Carranza, Andrew Heitzman, Adam Matthews, Matthew Rapattoni[1], and Kylie White seeking damages against defendants for violations of

---

[1] Throughout the record this individual's last name is spelled "Rapattoni" and "Rappatoni." The court will follow the spelling in the original caption of this action.

1

the First and Fourth Amendments under 42 U.S.C. § 1983 (Compl. (Docket No. 1).)  Defendants now move to dismiss plaintiffs' first cause of action for violation of 42 U.S.C. § 1983, second through fourth causes of action for violations of the First Amendment under 42 U.S.C. § 1983, and fifth and sixth causes of action for violations of the Fourth Amendment under 42 U.S.C. § 1983.[2]  (Defs.' Motion to Dismiss ("Mot. to Dismiss") (Docket No. 12).)  Defendants also move to dismiss defendants Matthews and Rapattoni from the case.  (Id.)

I. Summary of Allegations

On the morning of September 13, 2021, Mr. Palmer left his home around 8:45am to go to the gym before heading to work at his chiropractic clinic.  (Compl. ¶ 12.)  While driving west on the Franklin Street bridge of I-84 ("Franklin Overpass"), his car ran out of gas.  (Id. ¶ 13.)  Mr. Palmer pulled over and called his wife, Mrs. Palmer, to ask her to bring him a gas canister.  (Id. ¶ 14-15.)  While Mr. Palmer was on the phone with Mrs. Palmer, a neighbor drove by and left Mr. Palmer a voicemail saying he saw him pulled over on the Franklin Overpass and asking if he was alright.  (Id. ¶¶ 17-18.)  When Mr. Palmer got off the phone with Mrs. Palmer, he returned the call to the neighbor and left a voicemail explaining that he ran out of gas and Mrs. Palmer was on her way over.  (Id. ¶ 19.)

While he was waiting for Mrs. Palmer, Mr. Palmer exited his car on the sidewalk of the Franklin Overpass.  (Id. ¶ 20.)

---

[2]  Defendants do not seek dismissal of plaintiffs' seventh cause of action for excessive use of force in violation of the Fourth Amendment under 42 U.S.C. § 1983.

2

1  Alongside the Franklin Overpass, there is a three-foot high
2  concrete barrier which sits right below a six-foot high fence
3  overlooking I-84.  (Id. ¶¶ 21-22.)  Mr. Palmer began to stretch
4  his arms and legs on the barrier as he waited.  (Id.)
5         Detective Heitzman noticed Mr. Palmer standing next to
6  the barrier along the Franklin Overpass. (Id. ¶¶ 23-24.)  He
7  drove his unmarked police vehicle over to Mr. Palmer and turned
8  on his emergency lights.  (Id. ¶¶ 23-24.)  Detective Heitzman
9  ordered Mr. Palmer to sit on the curb and informed Mr. Palmer
10 that he thought he was attempting to climb the fence to commit
11 suicide.  (Id. 26-27.)  Mr. Palmer complied and sat on the curb.
12 (Id. ¶ 26.)  Mr. Palmer explained that he had run out of gas on
13 the way to the gym, was stretching while he waited for Mrs.
14 Palmer to bring him gas, and denied that he was attempting to
15 climb the fence.  (Id. ¶ 29.)  Detective Heitzman called for
16 backup.  (Id. ¶ 28.)
17        Mr. Palmer stood up from the curb to demonstrate to
18 Detective Heitzman how he was stretching his legs on the concrete
19 barrier.  (Id. ¶ 30.)  Detective Heitzman ordered him to sit back
20 down.  (Id. ¶ 31.)  Mr. Palmer complied but expressed his
21 frustration with being ordered to sit down.  (Id. ¶¶ 32-33.)  Mr.
22 Palmer explained to Detective Heitzman that he had previously had
23 bad experiences with police officers.  (Id. ¶ 33.)
24        Mr. Palmer then received a call on his cellphone from
25 Mrs. Palmer.  (Id. ¶ 36.)  When Mr. Palmer went to retrieve his
26 phone from his pocket, Detective Heitzman ordered that he keep
27 his hands out of his pockets.  (Id.)  Mr. Palmer then asked for,
28 and Detective Heitzman granted, permission to answer the phone.

1  (Id. ¶ 37.)  Mr. Palmer yelled: "It's a free country still, it's
2  still a free country, right?"  (Id.)  In his phone conversation
3  with Mrs. Palmer, Mr. Palmer insinuated that the police were
4  there to harass him and write him a ticket in order to pay their
5  salaries.  (Id. ¶ 40.)
6         While Mr. Palmer was on the phone with Mrs. Palmer,
7  Officer Carranza arrived.  (Id. ¶ 41.)  Detective Heitzman told
8  Officer Carranza that Mr. Palmer was being "super irate."  (Id. ¶
9  42.)  When the next officer arrived, Officer White, Detective
10 Heitzman repeated that Mr. Palmer was "irate" and said that Mr.
11 Palmer had "start[ed] to scream at [him]."  (Id. ¶ 44.)
12        Mr. Palmer explained to Officer Carranza that he had
13 run out of gas and was waiting for his wife.  (Id. ¶ 46.)  Mr.
14 Palmer then alerted Officer Carranza that Mrs. Palmer and her
15 father had arrived at the far end of the Franklin Overpass with
16 the gas cannister.  (Id. ¶ 47.)  Rather than recognize that Mrs.
17 Palmer and her father had arrived, Officer Carranza asked Mr.
18 Palmer why he was attempting to climb the fence. (Id. ¶ 49.)  Mr.
19 Palmer again explained that he ran out of gas while he was on the
20 way to the gym and was only stretching on the barrier.  (Id.)
21 Mr. Palmer showed the officers that he was wearing gym clothes.
22 (Id.)
23        As Mr. Palmer stood up to ask if he could go get the
24 gas canister from Mrs. Palmer, Officer Carranza ordered him to
25 sit back down.  (Id. ¶ 51.)  Before he could sit down, Officer
26 Carranza placed himself in front of Mr. Palmer and put his hand
27 on Mr. Palmer's chest.  (Id. ¶ 52.)  Mr. Palmer backed away,
28 saying, "[d]on't touch me, please, don't touch me," and sat down.

(Id. ¶ 52.)  Officer Carranza then grabbed Mr. Palmer's left arm and shoulder and ordered Mr. Palmer to put his hands behind his back while Mr. Palmer was sitting on the curb.  (Id. ¶ 53.)  Mr. Palmer refused.  (Id.)  Then Officer Carranza jumped on Mr. Palmer's back, jammed his knee into his back, and placed a forearm on the back of Mr. Palmer's neck. (Id. ¶ 54.)  Mr. Palmer placed both his hands on the ground to balance himself.  (Id. ¶ 55.)  A few seconds later, Mr. Palmer put his hands behind his back and allowed Officer Carranza to handcuff him.  (Id. ¶ 56.)  Officer Carranza fastened the handcuffs very tightly causing them to cut into Mr. Palmer's wrists.  (Id. ¶ 67.)

Again, Mr. Palmer tried to explain that he was stretching while waiting for Mrs. Palmer to arrive with gas. (Id. ¶ 58.)  Officer White ordered Mr. Palmer to "stop talking." (Id.)  In response, Mr. Palmer stated that he still had a First Amendment right. (Id.)

As Mr. Palmer was being handcuffed, Mrs. Palmer and her father explained to the officers that Mr. Palmer was "fine" and had just "r[u]n out of gas."  (Id. ¶ 59.)  Detective Heitzman told Mrs. Palmer that Mr. Palmer was "attempting to climb the fence" and was "not complying" with the officers. (Id. ¶ 60.) Mrs. Palmer told Detective Heitzman that the treatment of Mr. Palmer was unnecessary and "[s]omebody has an ego problem."

While Mrs. Palmer and Detective Heitzman were speaking, Mr. Palmer was taken to Officer Carranza's police vehicle.  (Id. ¶ 63.)  Detective Heitzman informed Mrs. Palmer that Mr. Palmer was "not under arrest right now, we are trying to figure out what's going on."  (Id. ¶ 64.)  Detective Heitzman then told Mrs.

5

Palmer to go to her car and "take a deep breath." (Id. ¶ 65.) Mrs. Palmer refused and said she was "going to help her dad put gas in the car." (Id. ¶ 65.) When she walked away, Mrs. Palmer told Detective Heitzman, "you guys are bored, obviously." (Id. ¶ 66.) Detective Heitzman screamed at Mrs. Palmer, calling her a "fucking dumb bitch." (Id. ¶¶ 67, 68.)

While Mr. Palmer was sitting in the police vehicle, Detective Heitzman again asked Mr. Palmer what he was doing on the Franklin Overpass. (Id. ¶¶ 69, 70.) Mr. Palmer again explained that he was stretching while waiting for gas. (Id.) Detective Heitzman told Mr. Palmer that Mrs. Palmer had mentioned that Mr. Palmer had a "mental illness" (schizophrenia). (Id. ¶ 71; Defs.' Reply in Supp. of Mot. to Dismiss ("Defs.' Reply") at 6 (Docket No. 18).) Mr. Palmer confirmed that he had been diagnosed but reiterated that he did not intend to commit suicide. (Compl. ¶ 71.)

The officers transported Mr. Palmer to West Valley Medical Center ("West Valley") to be placed on a mental hold. (Id. ¶ 72.) The medical personnel at West Valley did not see a need to place Mr. Palmer on a mental hold, explaining: "He did not appear to be a harm to himself or others." (Id. ¶ 79.) The medical personnel at West Valley contacted the Canyon County Prosecutor's office to request defendants release Mr. Palmer from the mental hold. (Id. ¶ 80.) The prosecutor's office refused to release Mr. Palmer until he met with a "Designated Evaluator." (Id. ¶ 81.)

Mr. Palmer remained at West Valley for over 50 hours because of the process required to release a patient from a

mental hold. (Id. ¶ 84.) The West Valley physician who met with the Palmers stated that Mr. Palmer should not be on a mental hold. (Id. ¶ 82.) The state Designated Evaluator Mrs. Palmer met with a few days later also believed Mr. Palmer should not have been placed on a mental hold and that his confinement had "everything to do with police and their fears." (Id. ¶ 83.)

Mr. Palmer was cited, but not charged, for disorderly conduct under Caldwell Code § 08-01-27 and obstructing an officer under Idaho Code § 18-705. (Id. ¶¶ 76, 77.)

II. Discussion

A. Mr. Palmer's Fourth Amendment Claims (Claims 5 and 6)

The above allegations are sufficient to support Mr. Palmer's false arrest claims under the Fourth Amendment. Under the Fourth Amendment, a warrantless arrest is constitutional if the arresting officer has probable cause to believe that a crime has been, or is being, committed. See Devenpeck v. Alford, 543 U.S. 146, 152 (2004). Mr. Palmer alleges that there was no probable cause to justify his arrest for violation of either Caldwell Code § 18-01-27[3] or Idaho Code § 18-705.[4] Accepting the

---

[3] Under Caldwell Code § 18-01-27, a person is guilty of misdemeanor disorderly conduct where they:

[e]ngage[] in fighting or threatening, or in violent behavior [or] [u]se language, an utterance, or gesture, or engage[] in a display or act that is obscene, physically threatening or menacing, or done in a manner that is likely to inflict injury or incite an immediate breach of the peace. Caldwell Code § 18-01-27(B)-(C).

[4] Idaho Code § 18-705 makes it a crime to: "willfully resist[], delay[] or obstruct[] any public officer, in the discharge, or attempt to discharge, of any duty of his office . . . ." Idaho Code § 18-705.

7

allegations of the complaint as true, they are sufficient to support a finding of lack of probable cause.[5]

Mr. Palmer also asserts that the officers lacked probable cause to place him on a mental hold. Idaho Code § 66-326 provides:

> . . . a person may be taken into custody by a peace officer and placed in a facility . . . [if there is] reason to believe that person is gravely disabled due to mental illness or the person's continued liberty poses an imminent danger to that person or others, as evidenced by a threat of substantial physical harm.

Accepting Mr. Palmer's allegation that explained that he ran out of gas on the way to the gym and was merely stretching on the fence while he waited for his wife and that this was corroborated by Mrs. Palmer arriving with a gas cannister and the fact that Mr. Palmer was dressed in his gym clothes, the complaint sufficiently sets forth facts from which could be inferred a lack of probable cause to

---

[5] The cases that have considered what actions are sufficient to violate Idaho Code § 18-705 suggest a person must do more than initially refuse an officer's command. Compare Moreno v. ID, No. 4:15-cv-00342 BLW, 2017 WL 1217113, at *9 (D. Idaho Mar. 31, 2017) (finding no violation of Idaho Code § 18-705 for "momentarily" refusing to comply with officers' commands to get on the ground), with Baker v. Clearwater Cnty, No. 2:20-cv-00376 CWD, 2022 WL 19411, at *9-10 (D. Idaho Jan. 3, 2022) (finding sufficient evidence for violation of Idaho Code § 18-705 for refusing to open a gate, drop a crowbar, and speak to officers who were responding to a dispatch call for false imprisonment); U.S. v. Tuschoff, No. 1:19-cr-00233 1 DCN, 2021 WL 932012, at *8 (D. Idaho Mar. 10, 2021) (repeatedly refusing to exit vehicle so officer could deploy drug sniffing dog); Soderberg v. City of McCall, No. 1:16-cv-00045 EJL, 2018 WL 264917, at *6-7 (D. Idaho Jan. 2, 2018) (preventing uniformed officer from entering hotel room to investigate the smell of marijuana and officer made clear that failure to comply would result in arrest).

8

1  believe that Mr. Palmer was gravely disabled or posed an
2  imminent danger to himself or others.
3        The motion to dismiss the fifth and sixth claims
4  of the complaint will accordingly be denied.
5     B.   Mr. Palmer's First Amendment Claims (Claims 2 and 3)
6        The allegations of the complaint are also sufficient to
7  state claims under 42 U.S.C. § 1983 for violation of Mr. Palmer's
8  rights protected by the First Amendment.  "The freedom of
9  individuals verbally to oppose or challenge police action without
10 thereby risking arrest is one of the principal characteristics by
11 which we distinguish a free nation from a police state." City of
12 Houston v. Hill, 482 U.S. 451, 462-63 (1987).  "The First
13 Amendment protects a significant amount of verbal criticism and
14 challenge directed at police . . . . 'unless shown likely to
15 produce a clear and present danger of a serious substantive evil
16 that rises far above public inconvenience, annoyance, or
17 unrest.'"  Id. at 461 (quoting Terminiello v. Chicago, 337 U.S.
18 1, 4 (1949)).  Taking the allegations as true, Mr. Palmer did
19 engage in protected speech by telling the officers he had
20 previously had bad experiences with the police, exclaiming "it's
21 a free country still, it's still a free country, right?", and
22 insinuating that the police were there to harass him and to
23 ticket him to pay their salaries.  (Compl. ¶¶ 33, 37, 40.)
24       The close temporal proximity between Mr. Palmer's
25 statements and his detention are sufficient at this stage in the
26 pleadings to allege that were a substantial motivating factor in
27 defendants' conduct.  See Ariz. Students' Ass'n, 824 F.3d at 871
28 ("[A] plaintiff may establish motive using direct or

9

1  circumstantial evidence" and may "rely on evidence of temporal
2  proximity between the protected activity and alleged retaliatory
3  conduct to demonstrate that the defendant's purported reasons for
4  its conduct are pretextual or false.").  The complaint also
5  sufficiently alleges that his detention and arrest were without
6  probable cause.  See Beier v. City of Lewiston, 354 F.3d 1058,
7  1065 (9th Cir. 2004) (explaining that probable cause does not
8  exist where the arrestee's conduct does not constitute a crime).
9        The motion to dismiss the second and third claims of
10 the complaint will accordingly be denied.
11       C.   Mrs. Palmer's First Amendment Claim (Claim 4)
12            Mrs. Palmer's claim for violation of her First
13 Amendment rights presents different considerations.  Both sides
14 discuss Biggs v. Best, Best & Krieger, 189 F.3d 989 (9th Cir.
15 1999), at length in arguing whether Mrs. Palmer's claim is
16 derivative of her husband's.  In Biggs, the court explained that
17 where one spouse brings a First Amendment retaliation claim for
18 retaliatory conduct taken against the other plaintiff spouse, the
19 spouse's claim is derivative of the plaintiff spouse's claim.
20 However, as the court reads the complaint in this action, Mrs.
21 Palmer is not pursuing a derivative claim based her husband's
22 cause of action.  Rather, she seeks to pursue a separate claim
23 based upon her allegations that the officers' conduct was in
24 retaliation for her exercise of her own First Amendment right of
25 free speech.
26            Accepting the allegations of the complaint as true,
27 Mrs. Palmer's statements at the scene when she told Detective
28 Heitzman, "you guys are bored, obviously" (Compl. ¶ 66.) could be

found to constitute protected speech under the First Amendment, and coupled with Detective Heitzman's epithet shouted at her and the detention of Mr. Palmer shortly afterwards could give rise to an inference that the officers' ensuing conduct was in retaliation for Mrs. Palmer's remarks.  Mrs. Palmer has accordingly alleged sufficient facts to state a claim under 42 U.S.C. § 1983 for violation of her First Amendment right of free speech.

The court expresses no opinion in this order, however, as to what damages, if any, Mrs. Palmer may be entitled to recover if the trier of fact finds that any of the officers' conduct was taken in retaliation against Mrs. Palmer for her exercise of that right.  Mrs. Palmer appears to advance the novel theory that she is entitled to recover for her own emotional distress as a result of seeing her husband arrested.  She also appears to seek damages for the loss of her husband's companionship, and perhaps income, while he was detained for over 50 hours on a mental hold.  That theory has not been adequately briefed in the papers, and the court need not address it in this order.

For those reasons the motion to dismiss the fourth claim of the complaint will be denied.

D. General § 1983 Claim (Claim 1)

While plaintiffs bring claims under § 1983 for violations of the First and Fourth Amendments, as discussed above, they also bring a "general allegation" claim under § 1983. (Compl. ¶¶ 94-99.)  Section 1983 is not itself a source of substantive rights -- it provides a cause of action against any

11

person who, under color of state law, deprives an individual of federal constitutional rights or limited federal statutory rights. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

Accordingly, insofar as plaintiffs' first § 1983 claim is premised on a general allegation,[6] as opposed to a specific constitutional or statutory violation, the court must grant defendant's motion to dismiss claim one of the complaint.

### E. Defendants Matthews and Rapattoni

Plaintiffs do not describe any specific conduct linking either defendants Matthews or Rapattoni to the alleged First or Fourth Amendment violations. A plaintiff cannot demonstrate the liability of a particular officer "without a showing of individual participation in the unlawful conduct." Jones v. Williams, 297 F.3d 930, 935 (9th Cir. 2002). Because plaintiffs do not allege facts that Matthews and Rapattoni individually participated in the alleged violations of Mr. Palmer's constitutional rights, the claims against Matthews and Rapattoni are insufficient. Accordingly, defendants' motion to dismiss the action as against defendants Matthews and Rapattoni will be granted.

---

[6] Plaintiffs argue that the general § 1983 claim should not be dismissed because: "Count I realleges all of the facts in the 'General Allegation' section of the [c]omplaint"; "the inclusion of Count I in the [c]omplaint is important to [p]laintiffs' remaining claims"; and "while Count I conceptually refers to the other claims, it does so in a broad manner, allowing for the possibility of additional counts upon further discovery, while also giving fair notice of the [p]laintiffs' claims." As the court has already stated, § 1983 is not a source of substantive rights. If plaintiffs wish to clean up their pleading by incorporating some of the allegations in their general § 1983 claim into any of their specific claims, they may do so by amending their complaint pursuant to this Order.

12

IT IS THEREFORE ORDERED that defendants' motion to dismiss the complaint (Docket No. 12) be, and the same hereby is, GRANTED as to plaintiffs' first claim, alleging a general § 1983 claim; and plaintiffs' claims against defendants Matthews and Rapattoni; and DENIED as to all of plaintiffs' other claims. Plaintiffs have twenty days from the date of this Order to file an amended complaint, if they can do so consistent with this Order.

Dated: November 3, 2022

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

13